FILED

2012 Aug-01  AM 10:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **KENNETH L. DALTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:11-CV-1864-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## **MEMORANDUM OPINION**

The plaintiff, Kenneth L. Dalton ("Mr. Dalton"), brings this action pursuant to the provisions of section 205 (g) of the Social Security Act (the Act), 42 U.S.C. § 405 (g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI")[1]. Mr. Dalton timely pursued and exhausted his administrative

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

remedies available before the Commissioner. Accordingly, this case is now ripe for review under 42 U.S.C. § 405 (g)[2], § 205(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Dalton was 42 years old at the time of his hearing before the administrative law judge ("ALJ"). He completed the twelfth grade. (Tr. 135). His past work experiences include employment as an industrial spray painter, house painter, and hospital maintenance worker. (Tr. 85, 151). Mr. Dalton claims he became disabled on November 17, 2006, due to a back injury, whiplash, daily headaches, high blood pressure, a history of open heart surgery, poor memory, and depression. (Tr. 129). Mr. Dalton filed his applications for SSI and DIB benefits on June 21, 2007. (Tr. 117-22). Those applications were denied on August 20, 2007. (Tr. 100). The Social Security Administration received Mr. Dalton's request for a hearing on September 13, 2007 (Tr. 105) and that hearing was held on June 18, 2009. (Tr. 38). The ALJ concluded that Mr. Dalton was not disabled and denied his applications on August 28, 2009. (Tr. 12). After having his request for review denied by the Appeals Council (Tr. 1), Mr. Dalton filed this action seeking review of the ALJ's decision. (Doc. 1). This court has carefully considered the record and affirms the decision of the ALJ.

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provision of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed by the Secretary;

_____

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through July 5, 2012.

4

(4)    whether the claimant can perform her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

### FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Mr. Dalton had not engaged in substantial gainful activity since his purported disability onset date of November 17, 2006. (Tr. 18). The ALJ next determined that Mr. Dalton was suffering from several severe impairments, including degenerative disk disease of the lumbar spine with a history of fracture at L2, coronary artery disease and status post 2 coronary artery bypass grafting surgery, headaches, and hypertension. (*Id*.). Considering these severe impairments, the ALJ found that they did not constitute an impairment or combination of impairments that

meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* In making that determination the ALJ specifically mentioned that the claimant did not exhibit the objective clinical findings needed to establish disability pursuant to Section 1.04 of the Listing of Impairments (disorder of the spine), and that the claimant did not meet or equal the criteria needed to establish disability pursuant to Sections 4.03[4] and 4.04 of the Listing of Impairments (hypertension and ischemic heart disease). (*Id.*).

Next, the ALJ considered Mr. Dalton's residual functional capacity ("RFC"), and found that Mr. Dalton has the ability to perform a limited range of light work.[5] (Tr. 18-19). In making that determination, the ALJ emphasized that he did not find Mr. Dalton to be credible. (Tr. 20 ¶ 3, Tr. 23 ¶ 1, Tr. 25 ¶ 2). He also stated that the medical source opinion completed by Ahmad Shikhtholth, M.D. ("Dr. Shikhtholth), indicating a disabling level of pain, was entitled to no evidentiary weight as it was not supported by the record. (Tr. 23).

---

[4] The court notes that there is no longer Section 4.03 in the Listing of Impairments.

[5] 20 C.F.R. § 404.1567(b) states "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

In light of his RFC determination, the ALJ concluded that Mr. Dalton could not perform his past relevant work. (Tr. 25). However, considering the claimant's age, education, work experience, and RFC, the ALJ determined that there were jobs in significant numbers in the national economy that the claimant was capable of performing. (Tr. 26). Accordingly, the ALJ concluded that Mr. Dalton was not disabled as defined by the Social Security Act, and denied his SSI and DIB claims. (Tr. 27).

## ANALYSIS

The court must review the Commissioner's findings of fact with deference, but may reverse when those findings are not supported by substantial evidence. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In making that determination, the court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)). Mr. Dalton argues that the ALJ's findings were not supported by substantial evidence because the ALJ "abused his discretion in finding Mr. Dalton did not meet or equal" listing 1.04(C), disorders of the spine. (Doc. 9 at 5). Additionally, Mr. Dalton claims that "[t]he ALJ failed to properly evaluate the claimant's complaints of pain as required under the 11th Circuit Pain Standard."

7

(Doc. 9 at 11). Upon review, the court finds that the ALJ did not abuse his discretion in finding that Mr. Dalton did not meet or equal listing 1.04(C), and that the ALJ properly applied the pain standard. Thus, the court affirms the decision of the ALJ.

## I. THE ALJ PROPERLY CONCLUDED THAT THE CLAIMANT'S IMPAIRMENTS DID NOT MEET OR EQUAL LISTING 1.04(C).

Mr. Dalton argues first that the ALJ erred in failing to find that he met or equaled the requirements of Listing 1.04(C) in Appendix 1 of the Social Security Regulations, disorders of the spine. (Doc. 9 at 5). The ALJ determined that Mr. Dalton did not "exhibit the objective and clinical findings needed to establish disability based on disorders of the spine as set for in Section 1.04 of the Listing of Impairments." (Tr. 18). On appeal, the plaintiff has failed to show how that decision was not supported by substantial evidence.

The impairments listed in Appendix 1 are so severe, that if a claimant's impairments meet or equal them, the claimant is automatically deemed disabled. *See* 20 C.F.R. § 404.1520(d).

> "When a claimant contends that he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment, or, if in the alternative, he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such an equivalency."

8

*Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987)

(citing *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986)).

> The listing Mr. Dalton claims to have met, 1.04(C), provides:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: . . .
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

1.04(C), 20 C.F.R. Subpart P, App. 1.

In this case, Mr. Dalton has not provided evidence in support of all the elements called for by listing 1.04(C). He cites his numerous doctor's reports which indicate the presence of moderate spinal stenosis and ongoing back and leg pain. (Doc. 9 at 7-11, citing Tr. 218, 236-37, 233, 323, 330-31, 335-39). However, these reports indicate, at most, the first two elements of listing 1.04(C), spinal stenosis and chronic pain.

Absent in these records is any reference or showing of the claimant's inability to ambulate effectively, a necessary component of listing 1.04(C). As the Supreme Court stated in *Sullivan v. Zebley*, 493 U.S. 521, 529 (1990), "[f]or a claimant to show that his impairment matches a listing, [the impairment] must meet *all* of the specified

medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."

The Regulations define an inability to ambulate effectively as:

[A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

1.00B2b, 20 C.F.R. Subpart P, App. 1.

Although there is some evidence that the plaintiff may have difficulty walking, the ALJ had substantial evidence to conclude that an inability to ambulate effectively was not present. In support of his contention that he cannot walk, Mr. Dalton

explained that walking on uneven surfaces "throws [his] hips into a little twist and it's very painful." (Tr. 49). Furthermore, he stated that his balance was poor on uneven surfaces, and that his ankle would swell as a result of heart surgery, affecting his ability to walk. (Tr. 48-49). Mr. Dalton also adduced clinical documents referencing that his "gait was antalgic."[6] (Tr. 233, 330). Conversely, some also indicated that his gait was normal. (Tr. 335).

Regardless, this conflicting evidence does not demonstrate that the ALJ erred in deciding the issue of whether Mr. Dalton could effectively ambulate, and thus satisfy listing 1.04(C). As set forth above, ineffective ambulation is generally characterized by lower extremity functioning so poor that both upper extremities are needed to aide in moving. Furthermore, the regulations provide that ineffective ambulation severely inhibits daily activities. The ALJ had substantial evidence to conclude that Mr. Dalton could effectively ambulate, in spite of Mr. Dalton's own testimony and medical statements noting an "antalgic gait." The ALJ specifically noted "[Dalton] stated that he sometimes walks a little while shopping with his wife and helps her some with that." (Tr. 21). The ALJ also pointed out different doctor's notes stating that "motor strength was normal in the legs," (Tr. 22), and that "[Mr.

---

[6] Antalgic gait is defined as a limp adopted so as to avoid pain on weight-bearing structures, characterized by a very short stance phase. (http://medicaldictionary.thefreedictionary.com/ antalgic+gait).

Dalton] leads an active lifestyle without limitations." (Tr. 23). As a result, the ALJ did have substantial evidence indicating Mr. Dalton's capacity to effectively ambulate. As the ALJ determined Mr. Dalton was capable of effective ambulation, he did not meet listing 1.04(C).

## II. THE ALJ PROPERLY APPLIED THE PAIN STANDARD.

Mr. Dalton asserts that the ALJ misapplied the Eleventh Circuit pain standard because "he has failed to give adequate reasons for discrediting the testimony provided . . . ." (Doc. 9 at 12). The court disagrees.

In determining whether to credit a claimant's subjective testimony of pain or other symptoms, the pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). A claimant's statements about pain or other symptoms do not alone establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Instead, medical signs and laboratory findings must depict medical impairments that could reasonably be expected to produce the alleged symptoms. *See id; see also Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Landry*, 782 F.2d 1551). When an impairment that could reasonably be

12

expected to produce the symptom(s) alleged has been shown, the intensity and persistence of the symptom(s), such as pain, will be evaluated based on all the evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

In applying this test, the ALJ found that there was an underlying medical condition, but that objective medical evidence did not confirm the alleged severity of pain. The ALJ explained that Mr. Dalton's reported pain level of "8-10/10" was not supported by medical evidence. The ALJ noted that Mr. Dalton's medical records revealed only a mild condition. Specifically, the ALJ cited medical records indicating the claimant had only a "20% compression fracture," (Exhibit C1F), and that MRIs confirmed that the condition was not worsening. (Tr. 20). The ALJ repeatedly mentioned that the claimant's condition was "mild." He stated "a repeat MRI scan of the lumbar spine on October 13, 2006 was interpreted as showing only a mild chronic anterior compression fracture at the level of L2 and mild multi level degenerative disk disease with not evidence of significant spinal stenosis."  Relying on this medical evidence, the ALJ concluded that it did not show a disabling level of pain.

Furthermore, the ALJ determined that Mr. Dalton's testimony indicating a disabling level of pain was not credible. In regard to Mr. Dalton's credibility, the ALJ stated "the claimant's statements concerning the intensity, persistence, and limiting

effects of these symptoms *are not credible* to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 20) (emphasis added).

The ALJ had substantial evidence to arrive at this conclusion. In particular, the ALJ mentioned that Mr. Dalton's reports to doctors of having 3-4 headaches per month were inconsistent with his statement at the hearing that he had 30-40 headaches per month. (Tr. 23).  Also, he mentioned that Mr. Dalton's allegations of 20-30 "attacks of chest pain" per month and his need to elevate his leg every three hours  to alleviate swelling was not supported by any evidence. (Tr. 23). In doing so, the ALJ implied that Mr. Dalton exaggerated the severity of his medical conditions. Finally, the ALJ indicated throughout that Mr. Dalton's complaints and subjective allegations may have been motivated, at least in part, by a methadone addiction, and that Mr. Dalton's doctors refused to treat him because of his narcotics abuse. (Tr. 22). Thus, the ALJ had substantial evidence for concluding that Mr. Dalton's allegations of pain and other subjective complaints were not credible.

In this case, the ALJ properly applied the pain standard. The ALJ found there was no credibility to the degree of pain asserted by Mr. Dalton. Although objective medical evidence demonstrated underlying infirmities, the evidence was so mild that it did not confirm Mr. Dalton's allegations of the severity of his pain and his medical condition was not severe enough to reasonably result in his alleged levels of pain.

Thus, this court concludes that the Eleventh Circuit pain standard was properly applied by the ALJ.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and the Commissioner applied the proper legal standard. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** this the 1st day of August, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

15